Howry, J.,
delivered the opinion of the court:
Under the provisions of an act entitled “An act to amend the customs-revenue laws and to repeal moieties,” approved June 22, 1874 (18 Stat. L., 186), the plaintiff seeks to recover $37,500 as one-half of the net proceeds resulting, as he alleges, from the detection and seizure of certain merchandise smuggled into the United States at the port and district of San Francisco, in the year 1891, by the firm of Neuberger, Eeiss & Co. The petition shows that the plaintiff was an acting inspector of customs at said port, duly appointed and qualified, and at the time mentioned was regularly assigned to receive and deliver unappraised and imported merchandise arriving at San Francisco overland in bond, and for such purpose was stationed at the freight depot of the Southern Pacific Eailroad Company in San Francisco.
It is further shown that the firm of Neuberger, Eeiss & Co. was a copartnership of merchants engaged in the business of importing and buying and selling at wholesale and retail foreign drygoods at said port and city; that on or about the 21st *573 day of September, 1891, while the claimant was in the discharge of his official duties, there was issued and delivered to him by the p>rop>er custom-house officers three x>ermits covering-consular invoices purporting to be invoices of cotton toweling imported by Neuberger, Eeiss & Co., entered at New Orleans for transportation in bond to San Francisco. Said permits authorized and ordered certain designated packages to be sent to the appraiser’s store for examination and all the other packages appearing upon the invoices and permits delivered to the importers. That while in the act of handling and delivering the merchandise in compliance with the terms of the permits the claimant, according to the allegations of the petition, discovered and detected through a damaged case or package of said merchandise that the contents of the broken case or package and of all of the cases appearing up)on said permits and invoices did not correspond with the description according to the permits and invoices, except the cases which had been designated and ordered to the appraiser’s store for examination. The discovery was then made, it is further alleged, that instead of containing cotton goods of any character, as noted on the jmrmits, the cases, and all of them, except those designated as aforesaid for examination, contained woolen, silk, or velvet goods of greater value and under the law bearing a higher rate of duty than the cotton goods contained in the cases ordered to the appraiser’s store for examination, whereby the firm of Neuberger, Eeiss & Co. was engaged in the act of smuggling merchandise into the United States and defrauding and attempting to defraud the revenues of the Government.
Having discovered the fraud, the claimant alleges that he immediately seized all of the merchandise, and that thereafter numerous other invoices of merchandise arrived at the port consigned to the same importers which, upon examination, were found to be in like condition as the invoices above described as to contents, and were likewise seized by order of the collector. Criminal prosecutions were thereupmn instituted against the smugglers, the claimant appearing as an important and necessary witness in behalf of the Government. Indictments were returned against Bernard Eeiss, a member of the firm of Neuberger, Eeiss & Co., for complicity in the frauds. Eeiss pleaded guilty to one of the indictments, and a maxi *574 mum fine of $5,000 was imposed by tbe court and paid by bim into tbe Treasury. Further criminal proceedings against Eeiss and tbe other members of the firm were discontinued upon tbe payment by them to tbe United States of tbe sum of $70,000, besides the duties on all tbe merchandise and in addition to tbe fine mentioned, tbe payments being made to tbe United States on or about March 2,1892.
Tbe claimant alleges that no other person besides himself detected the frauds and seized tbe merchandise mentioned while it was in tbe act and condition of being smuggled, and during the attempt to bring tbe merchandise into tbe United States with intent to defraud without passing tbe same through tbe custom-house, and without submitting tbe same to tbe officer of tbe revenue for examination, and that be presented bis claim, duly verified, to the Secretary of tbe Treasury, but that tbe Secretary rejected tbe claim in whole and refused to make any award of any sum to bim at all for tbe services thus alleged to have been performed.
By agreement of the parties, a copy of tbe letter of the Secretary of tbe Treasury to tbe collector of customs at San Francisco, dated April 13, 1893, and article 979 of the customs regulations of 1892 are made part of the petition, and tbe sufficiency of the demurrer of the defendants to the complaint will be determined as if all tbe facts set forth in said letter and article were incorporated in tbe petition as part of its averments.
Following is tbe letter of tbe Secretary, to wit:
“Treasury Department,
“Office of the Secretary,

“April 11,1893.

“ Collector of Customs, San Francisco, Gal.
“ Sir: Eeferring to tbe claim of T. O. Eagar for compensation as‘detector and seizor’in connection with seizure case Nos. 5492-3 of certain woolen dress goods, etc., at your port on September 28,1891, for violation of section 9 of tbe act of June 10, 1890,1 have to state that from tbe evidence submitted in this case, and more particularly from the reports of tbe inspector, John F. Murray, and that of Special Agent J. F. Evans, it does not appear that Mr. Eagar is entitled to compensation. From Mr. Murray’s report, under date of September 30,1891,it appears that, actingunder directions to exercise surveillance over the importations of certain merchants, Messrs. Neuberger, Eeiss & Co. being among tbe number, Mr. Murray *575 noticed the arrival of eighteen cases of goods by railroad, consigned to said firm, on September 21, and on the following day, learning that the goods had been entered duty paid, he went to the railroad station with a view of ascertaining whether the contents of the cases destined for the importer’s store were of' the same character as those ordered to appraiser’s store, and found upon arrival that one case of goods comprised in said importation, which had been broken en route, had been left there as the drayman had refused to receive it; that Mr. Murray called the inspector, T. 0. Eagar, who was in charge at the depot, to the fact that the aboved-named firm was under suspicion, and that honest importers had complained to the Department and to the custom-house that this firm was selling goods at prices which precluded competition. It appears further that said case of goods had been recoopered and would have been delivered to the drayman or to the agent of said firm if it had not been for the information given by Mr. Murray, and also a promise obtained from Inspector Eagar to examine the contents of said case before delivery.
“Special Agent J. F. Evans, who investigated this case, reports, under date of the 10th ultimo, that it being the gen.eral belief that several importing firms were avoiding payment of legal duties by substitution or other means, Inspector Murray was instructed to give special attention to importations of Messrs. Reuberger, Eeiss & Co.; that the day before the discovery of the fraud he (Murray) called at the railroad depot, and, seeing a broken case of goods, asked for the permit and examined and told Inspector Eagar that the firm of Neuberger, Keiss & Co. was under suspicion, and advised him, when an opportunity occurred after the departure of the railroad employees, to open the case and see if the contents agreed with the description given in the permit; that this was the first information Mr. Eagar had in regard to the probability that this firm was defrauding the Government, and doubtless led to the discovery.
“It appears from the above report that the fraud which was attempted to be perpetrated upon the Government would not have been discovered by Inspector Eagar if he had not received information from Inspector Murray in regard to the standing of the firm of Neuberger, Keiss & Co., with a request to examine the case of goods left at the depot before it was delivered.
“In view of the facts presented, the Department must decline to recognize Inspector Eagar as the detector, and it appears that Mr. Murray gave the information which led to the seizure; consequently no award can be made.
“I will thank you to inform Mr. Eagar of the Department’s decision.
“Respectfully, yours,
“O. L. Spaulding, Acting Secretary.”
*576 The regulation is as follows:
“Art. 979. No claims of either informers or seizing officers for compensation should be forwarded to the Department unless a sum not less than $5 is available for award to the claimant. In the case of an informer’s claim, the net amount available, is the sum realized, less all legitimate expenses incurred in connection with the violation of the customs-revenue laws; and in the case of a claim of a detector and seizor, the net amount available is the sum realized, less legal duties, expenses, and all other legitimate charges which have accrued. After all such deductions have been made, informers whose claims have been clearly established will be awarded 25 per centum and detectors and seizors will be awarded 85 per centum of such net proceeds, except where, in special cases, the Department may deem it expedient to either to increase or decrease the percentages specified.” (Customs Regulations 1892, p. 402.)
For causes of demurrer it is alleged by the United States that the petition fails to state facts sufficient to constitute a cause of action, and upon the facts stated in the complaint the claimant is entitled to recover nothing, in that it appears by the petition that the Secretary of the Treasury has made no award at all in favor of the claimant for the services declared for in the petition, if any such were rendered.
In the act under which the present suit is brought are the following provisions which the respective parties to the suit claim to be applicable, viz:
“SECTION 6. That no payment shall be made to any person furnishing information in any case wherein judicial proceedings shall have been instituted unless his claim to compensation shall have been established to the satisfaction of the court or judge having cognizance of such proceedings, and the value of his services duly certified by said court or judge for the information of the Secretary of the Treasury; but no certificate of the value of such service shall be conclusive of the amount thereof. And when any fine, penalty, or forfeiture shall be collected without judicial proceedings the Secretary of the Treasury shall, before directing payment to any person claiming such compensation, require satisfactory proof that such person is justly entitled thereto.
“ Section 4. That whenever any officer of the customs or other person shall detect and seize goods, wares, or merchandise in the act of being smuggled, or which have been smuggled, he shall be entitled to such compensation therefor as the Secretary of the Treasury shall award, not exceeding in amount one-half of the net proceeds, if any, resulting from such seizure, after deducting all duties, costs, and charges connected *577 therewith: Provided, That for the purposes of this act smuggling shall be construed to mean the act, with intent to defraud, of bringing into tlie United States * * * dutiable articles without passing the same, or the package containing the same, through the custom-house, or submitting them to the officers of the revenue for examination.” * * *
The Government contends that the claim for compensation has not been certified by the court before which the parties charged with the fraud were prosecuted, or by some judge thereof. This objection would be valid if the claim was that of a person merely furnishing information as provided by section 6 of the act of June 22, 1874. That section contemplates the certificate of the court or judge for the information of the Secretary of the Treasury where judicial proceedings have been instituted against persons violating the law, so as to afford the Secretary some knowledge of the character and value of the information given by informers resulting in the institution of proceedings, but the certificate in such cases is only advisory and never conclusive. But section 4 provides that whenever any officer of the customs or other persons shall detect and seize goods in the act of being smuggled, or which have been smuggled, he shall be entitled to the compensation to be fixed by the Secretary. In the case of the officer making the discovery and seizure the certificate is not required. Where the officer makes the discovery and seizure he reports his action to the collector, who certifies the case to the Treasury. Where the informer gives the information and the court has judicial knowledge of its character in the proceedings taken consequent upon the information, the certificate of the court or judge becomes necessary. The case at bar is one where an officer claims to have detected and seized the goods and no certificate is necessary.
It is contended again by the Government that the case at bar does not present a case of smuggling, because the petition' alleges that the goods seized had been invoiced under consular certification for importation at New Orleans, and were so imported and transported in bond from that place to San Francisco, and that on their arrival at the latter port certain packages of them had been ordered, on permits duly issued, tobe sent to the appraiser’s store for examination,, and the other packages, on like permits, ordered to be delivered to the *578 importers. If tbis contention of tbe defense be true, then the court erroneously imposed the fine and the Government wrongfully collected a larg'e amount of money from Neuberger, lieiss & Co. in compromise of the frauds charged against them. It is but necessary to recur to the statutory definition of smuggling and examine the letter of the Secretary of the Treasury accompanying the petition to determine this question on the facts of the case. The reward promised by section 4 of the act of June 22, 1874, is to any officer of the customs who shall detect and seize goods in the act of being smuggled, or which have been smuggled. The proviso to the section defines smuggling to mean the act, with intent to defraud, of bringing into the United States, or, with like intent, attempting to bring into the United States dutiable articles without passing the same, or the packages containing the same, through the custom-house, or submitting them to the officers of the revenue for examination. (1 Supp. It. S., 32.) The invoices described large quantities of valuable woolen, silk, and velvet goods as cotton goods, and not only was an attempt made to pay on less valuable goods while being so entered through the custom-house under the false invoices, but the attempt was nearly successful. There was a distinct attempt to evade the requirement of submitting the goods to the officers of the revenue for examination, and the facts present a clear case of fraud by means of the false invoices within the meaning of the statute.
Was the petitioner the detector and seizor, and as such entitled to an award1? It is argued in his behalf that no attempt has been made to sustain the action of the Secretary of the Treasury in refusing to recognize the claim; that the Secretary’s letter rejecting the demand proves that claimant’s acts were complete save so far as they were tainted by the .interference of the visiting inspector, and that the letter of the Secretary should be construed as an allowance under the regulation. There is much force in the argument that few detections and seizures are the result of accident, and that rumors and suspicions render officials alert and are most frequently the cause of the discoveries of attempted fraud upon the revenue laws. But mere rumor did not lead the plaintiff in this case to the broken case of goods. There were rumors, it is true, that several importing firms were avoiding the payment of legal duties by substitution or otherwise, and these *579 rumors assumed tbe form of general belief in tbe community so far as Eeuberger, Eeiss & Co. were concerned. If without tbe intervention of tbe visiting inspector, Murray, tbe rumors bad been acted upon by tbe plaintiff, or if tbe inspector bad merely communicated these rumors, prevailing in commercial circles and elsewhere, that frauds against tbe revenues bad been committed without information as to what frauds bad been committed, and bad failed to furnish some clue to their detection and plaintiff bad detected tbe frauds and seized tbe goods, then and in that event be would be entitled to compensation.
But tbe discovery of tbe frauds was tbe direct result of tbe visiting inspector’s action and instructions. Tbe argument involved in the' statement that tbe visiting inspector simply told tbe plaintiff that tbe importers were under suspicion, and that complaint bad been made by honest importers that Eeuberger, Eeiss & Co. were selling goods at a price which precluded competition, is not sustained by tbe facts, as they otherwise appear in tbe record. Tbe inspector, Murray, was under instructions to give special attention to tbe importations of the firm charged with tbe frauds. These instructions must necessarily have come from tbe superior officer of Murray in tbe due course of business, and were no doubt tbe result of tbe rumors concerning the fraudulent importers at tbe port where tbe plaintiff was serving as an inspector himself. TJnder tbe instructions tbe officer specially charged went to tbe freight depot, and, seeing a broken case of goods, asked for tbe permit and examined it, and told tbe plaintiff that tbe firm of Neuberger, Eeiss & Co. was under suspicion, and advised him when an opportunity occurred after tbe departure of the railroad employees to open tbe case and see if tbe contents agreed with tbe description given in tbe permit. It can not, therefore, be said that the direction of tbe visiting inspector to the plaintiff was a chance suggestion, supplying to the plaintiff no clue to work up the case. It was a positive direction to tbe plaintiff what to do and bow to verify tbe rumors. It supplied to him tbe direct and ready means of detection, and afforded him opportunity in the line of bis official duly to make tbe seizures. Tbe failure to have performed tbe duty thus required would have been, to say tbe least, an inexcusable and gross dereliction of duty on the part of the plaintiff. Eo fraud upon tbe revenue would likely ever be *580 reported without consequent claim for extra compensation if an inspecting officer under circumstances like these should refuse to examine and seize packages.
In the view we have taken of the Department action disallowing Eagar’s claim we have not deemed it necessary to consider the question of the extent and scope of the Secretary’s powers under the law, and the regulations adopted thereunder, providing for the payment of informers, detectors, and seizors. There is no such case before the court in this record as to-make necessary for any absolutely useful purpose an authoritative expression of opinion respecting the scope of the Secretary’s powers, the right of the courts to examine the Department action where conflicting claims have arisen, or where for reasons similar or dissimilar to those presented in this case the action of the Secretary is sought to be reviewed. On this part of the case we think it sufficient to say that the statute is clear enough for most of the controversies that may arise. And with out knowledge as to whether any other claim has been made before the Secretary by or in behalf of alleged informers, detectors, and seizors on account of the frauds of Neuberger, Eeiss & Oo., we deem it sufficient to say that the claimant is before the court without an award from the Secretary of the Treasury, aud the facts amply vindicate the correctness of the Department action.
For the reasons set forth, the demurrer of the United States is sustained, with leave to claimant to amend the petition by the 1st day of December next, if he so elects; otherwise the said petition to be dismissed.